DEVIN, J., took no part in the consideration or decision of this case.
CLARKSON, J., dissenting.
The plaintiff alleged and offered evidence tending to show that on 25 December, 1933, she purchased a bottle of Coca-Cola at a store in Buncombe County that was bottled and sold by the defendant. She drank a large portion of the contents of the bottle. Narrating the circumstances as a witness, she said: "After drinking the Coca-Cola, the part I did drink, I felt a foreign substance in my mouth and throat. I swallowed part and spit the rest back. It was a bug. The bottle had a brownish, grayish looking mass in the bottom, . . . looked like a chew of tobacco. . . . I examined the bottle and saw a bug in the bottle at that time. . . . I was heaving, sick on my stomach," etc.
There was evidence that the bottle of Coca-Cola was purchased by Loving, a merchant, from the defendant on Friday, and that the plaintiff drank the contents on the following Monday. Loving, the merchant, testified he bought the Coca-Cola from a truck. He said: "I bought that Coca-Cola off the Coca-Cola truck that delivers at my store. . . . I think my wife bought it Friday before." This witness further said that when the plaintiff drank the contents of the bottle "she laid down part of it on the ice box out of her hand and handed me the bottle. It looked like a yellow jacket, roach, or something, and this other thing stuck down in the bottom of the bottle, looked like a half inch wide, probably a little longer than that."
The physician to whom the bottle was given for examination testified that he examined it, and that "there was an insect on one side. I examined the material I found. The material was submitted to me for the *Page 752 
purpose of determining whether there was an unborn child or embryo in the bottle. I found it wasn't the case. I did find a colony of fungi in the bottle. Fungus is a mold, same kind of mold you see ever so often when some of your preserves get rotten," etc.
The defendant offered evidence, which was uncontradicted, tending to show that the plant where the Coca-Cola was bottled was "such a plant as is approved and in general use. . . . Some of them are larger, but as far as the equipment is concerned it is the last word and all that human ingenuity can work out to absolutely turn out a sanitary, clean product." Witness for defendant described in detail the machinery and appliances used at the plant, the method of bottling, inspection, capping, etc., and all of this evidence tended to show the exercise of the highest degree of care, not only in the entire operation but in the selection and maintenance of the best machinery and appliances that could be procured for such purposes. There was also evidence that when the bottle was first capped in the plant the cap could not be removed with the hands, but after the cap had once been removed, it could thereafter be taken off or replaced by hand.
The cause was tried in the general county court upon issues of negligence and damages. The jury answered the issues in favor of the plaintiff and awarded the sum of $1,576. Exceptions were duly filed and the judgment of the county court was approved in the Superior Court, and the defendant appealed.
A bug is found in Coca-Cola, bottled and sold by the defendant to a merchant, who in turn sold to the plaintiff. The product was delivered by the defendant to the merchant on Friday and the plaintiff drank the contents on the following Monday. The bottle was capped and there was no evidence that it had been tampered with after delivery to the merchant.
The defendant offered evidence, which was uncontradicted, tending to show the exercise of the highest degree of care in cleansing bottles, bottling and capping them, inspection and supervision and that the plant was equipped with every appliance, safety device, and approved method that inventive genius could devise.
There was no evidence that any foreign substance of any kind had ever been found in any Coca-Cola bottled and sold by the defendant at any other time during its business existence.
The only evidence tending to establish negligence on the part of the defendant is the presence of the bug in the bottle containing the Coca-Cola sold to the plaintiff, and a holding that the evidence of this one fact *Page 753 
is sufficient to carry the case to the jury can be reached only by invoking the doctrine of res ispa loquitur, which doctrine, irrespective of what may have been the holding in other jurisdictions, this Court has repeatedly held is not applicable to cases of this character. In a recent case, after stating that the basis of liability in such cases is negligence rather than warranty, this Court said: "That in establishing the alleged negligence of the manufacturer, bottler, or packer, the plaintiff is not entitled to call to his aid the doctrine of res ipsa loquitur." Enloe v. Bottling Co., ante, 305, and cases there cited.
We are of the opinion, and so hold, that his Honor erred in denying the defendant's motion, properly lodged under C. S., 567, for judgment as of nonsuit.
Judgment reversed.
DEVIN, J., took no part in the consideration or decision of this case.